Filed 9/25/25; Certified for Publication 10/21/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C101541 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE003037) |
| v. | |
| SCOTT LOUIS FEISE, | |
| Defendant and Appellant. | |

While driving under the influence of alcohol, defendant Scott Louis Feise hit Robert A. and Aaron D. in a head-on collision. Aaron D. suffered a myriad of severe injuries including a shattered femur, knee, shin and ankle; a dislocated foot; and completely torn ligaments on his right leg. After many surgeries and procedures, Aaron D.'s right leg became infected and required a lower leg amputation. Aaron D. became wheelchair bound, required constant assistance, and lost his jobs.

A jury found defendant guilty of driving under the influence causing injury (Veh. Code, § 23153, subd. (a)) and found true that defendant personally inflicted great bodily

1

injury to Aaron D. (Pen. Code,[1] § 12022.7, subd. (a)), that he personally inflicted great bodily injury causing Aaron D. to become paralyzed (§ 12022.7, subd. (b)) and that he caused great bodily injury to more than one victim (Veh. Code, § 23558). The trial court sentenced defendant to an aggregate term of seven years four months, including a five-year enhancement for great bodily injury causing paralysis (§ 12022.7, subd. (b)).

On appeal, defendant claims the trial court abused its discretion by imposing the five-year enhancement for great bodily injury causing paralysis rather than the three-year enhancement for great bodily injury. Defendant also contends there was insufficient evidence to support the five-year enhancement. Specifically, he argues that expert testimony was required to prove that Aaron D. was comatose or suffered neurological paralysis and that there was insufficient evidence that the collision caused Aaron D.'s paralysis.

Finding no merit to these claims, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Just after 11:00 p.m. on September 25, 2019, Robert A. was driving a van with his cousin, Aaron D., when they noticed defendant's truck on the road coming toward them. They saw defendant's truck "zigzag" and "overcorrect" into a ditch before it "flew" toward Robert A. and Aaron D., ultimately hitting their van. When defendant's truck hit their van, the van went up into the air and spun into a field. Defendant's truck "bounced off the frame" and then ran over the top of the van causing the roof to cave in while Robert A. and Aaron D. were still inside. Later testing showed that defendant's blood-alcohol level was 0.221 percent.

Robert A. was "slammed" on the left side of his body. He sustained a concussion as well as injuries to his wrist, thumbs, shoulders, chest, knees, and ankles.

---

[1] Undesignated statutory references are to the Penal Code.

2

Aaron D. was also severely injured. Glass shattered into his eyes causing them to bleed; the engine "smacked" his chest; and he hit his head on the engine as well as on the floor jack. He was pinned inside the car with his right leg smashed "on the dashboard like an accordion." He lost all feeling on his right side and struggled to breathe. His intestines were "off [his] stomach" and his ribs were broken.

Paramedics used the "Jaws of Life" to get Aaron D. out of the van. He was taken to the hospital with severe injuries to his colon and intestines, lungs, bones, and other organs. He underwent immediate surgery, followed by many other "back-to-back" surgeries and medical procedures in the intensive care unit before eventually being released on January 16, 2020, almost four months after the accident. While in the hospital, two-thirds of his colon and two-thirds of his intestines were removed. After intestinal surgery, he was diagnosed with a "leak" where his intestines had been reconnected; this leak caused a "significant" sepsis infection requiring additional surgery. Aaron D. also had his lung drained and went through therapy for months to help with his breathing.

Many of the bones in Aaron D.'s right leg were "shattered" including his femur, knee, shin and ankle; his right foot was also dislocated. His "LCL and ACL" had "tore completely off." A rod was placed into Aaron D.'s femur through his hip area; a stabilizer was also placed in his leg; and pins were put into his ankle to hold it in place.

As a result of his injuries and the necessary medical procedures, Aaron D.'s leg was susceptible to infection and required weekly cleaning while he waited for the bones to fuse together and his injuries to heal. But Aaron D. did not receive "proper care" during this time, and his leg became infected with cellulitis and sepsis. His foot turned black and was "dying" from infection. He also kept losing flesh from his foot as a result of the swelling and infection. Aaron D. eventually went to the emergency room and staff there told him he would die if he did not get his "leg cut off."

Aaron D.'s right lower leg was amputated at the middle of his shin. Although he was given a prosthetic, he had trouble "getting used to it," so he opted to use a wheelchair instead.

Aaron D. confirmed that the crash caused his injuries and the resulting complications. His entire life changed after the crash, and he was in "agony all the time." He needed assistance for "everything" including cooking, showering, and standing for extended periods. He was bedridden with "high pain levels all day," and his muscles atrophied because he suffered from too much internal pain and scar tissue to move. Because of his injuries, Aaron D. was unable to continue working as a manager of a McDonald's and doing electrical work.

Aaron D. continued to undergo procedures and surgeries as recently as 2022 when physicians needed to "reestablish continuity" in his intestines, reconnect his colon, and remove a "large portion" of scar tissue. He was also readmitted to the hospital in 2022 when he became dehydrated and had an "electrolyte abnormality" as a result of a high output of fluid from his ileostomy bag.

In addition to his physical injuries, Aaron D. also developed a fear of being inside a vehicle; he no longer felt safe driving and suffered from panic attacks when he would see other vehicles on the road. He purposefully avoids driving to places like family events and medical appointments, instead opting for the light rail because it is "bigger" and feels safer.

A jury found defendant guilty of driving under the influence causing bodily injury (Veh. Code, § 23153, subd. (a)). The jury also found true that defendant personally inflicted great bodily injury to Aaron D. (§ 12022.7, subd. (a)), that he personally inflicted great bodily injury causing Aaron D. to become paralyzed (§ 12022.7, subd. (b)) and that he caused bodily injury to more than one victim (Veh. Code, § 23558).

At the sentencing hearing, the trial court selected the low term of 16 months for driving under the influence, based on defendant's minimal criminal record and

contributions to society, including his military service and gainful employment. The trial court also imposed the five-year enhancement under section 12022.7, subdivision (b). The court noted to the extent it had discretion to choose between the two great bodily injury enhancements, it selected the five-year enhancement, "because it more accurately reflects the enormity of the injuries inflicted and it more justly achieves a proportionate sentence in this case." The trial court also imposed a consecutive one-year term for the multiple victim enhancement for a total determinate term of seven years four months. The court struck the subdivision (a) great bodily injury enhancement. (§ 12022.7, subd. (h).)

Defendant timely appeals.

DISCUSSION

I

*Great Bodily Injury Enhancement*

Defendant contends that the trial court abused its discretion when it imposed the greater enhancement under section 12022.7, subdivision (b) instead of the lesser under section 12022.7, subdivision (a).[2]

"When two or more enhancements may be imposed for the infliction of great bodily injury on the same victim in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense." (§ 1170.1, subd. (g).) The jury found two great bodily injury enhancements true: 1) defendant personally inflicted great bodily injury on Aaron D. (§ 12022.7, subd. (a)) and 2) defendant personally inflicted

---

[2] Although not clearly articulated in his brief, defendant appears to claim that the trial court abused its discretion in failing to strike or dismiss the five-year enhancement under section 1385. Defendant did not ask the trial court to strike or dismiss the section 12022.7, subdivision (b) enhancement in his sentencing brief or at the sentencing hearing. Consequently, to the extent defendant raises a section 1385 issue here, the claim is forfeited. (*People v. Coleman* (2024) 98 Cal.App.5th 709, 724.)

great bodily injury causing paralysis (§ 12022.7, subd. (b)).  The subdivision (a) enhancement carries an additional three years and the subdivision (b) enhancement an additional five.  (§ 12022.7, subds. (a), (b).)  Both enhancements stemmed from the same offense with the same victim.  Thus, the trial court was required to impose the "greatest of those enhancements" (§ 1170.1, subd. (g)); that is, the five-year term for personally inflicting great bodily injury causing Aaron D. to suffer paralysis under section 12022.7, subdivision (b).  There was no error.

II

*Substantial Evidence of Great Bodily Injury Causing Paralysis*

Defendant contends insufficient evidence supports the jury's finding that he personally inflicted great bodily injury causing paralysis under section 12022.7, subdivision (b), because:  1) there was no expert testimony establishing that Aaron D. was paralyzed from a neurological injury; 2) there was no evidence as to whether Aaron D.'s leg amputation resulted from the injuries from the car accident or from "other factors"; and 3) there is no evidence that Aaron D. suffered a brain injury or became comatose.  We reject these arguments.

"In addressing a claim of insufficient evidence to support a conviction, this court ' "reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." '  [Citation.]  'We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.' "  (*People v. Jackson* (2016) 1 Cal.5th 269, 345.)  "The jury is entitled to draw reasonable inferences based on the evidence [citation], and we must accept all logical inferences the jury might have drawn from the evidence, even if we would have concluded otherwise."

(*People v. Campbell* (2020) 51 Cal.App.5th 463, 484.) " ' "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt." ' " (*Ibid.*) We do not reweigh or settle conflicts in the evidence, nor do we assess the credibility of witnesses. (*In re Caden C.* (2021) 11 Cal.5th 614, 640.)

Reversal for insufficiency of the evidence is " ' "unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " ' " (*People v. Manriquez* (2005) 37 Cal.4th 547, 577.)

Section 12022.7, subdivision (b), requires an individual to be punished by an additional and consecutive term of imprisonment for five years if they personally inflict great bodily injury in the commission of a felony which causes the victim to "become comatose due to brain injury or to suffer paralysis of a permanent nature . . . . ." Paralysis is defined as "a major or complete loss of motor function resulting from injury to the nervous system or to a muscular mechanism." (§ 12022.7, subd. (b).)

As an initial matter, the statutory definition of "paralysis" does not require that a victim suffer "paralysis from a neurological injury" as defendant suggests. Instead, the plain language of the statute requires that an individual personally inflict great bodily injury which causes the victim to "become comatose due to brain injury *or* to suffer paralysis of a permanent nature . . . . ." (§ 12022.7, subd. (b), italics added.) " '[P]aralysis' means a major or complete loss of motor function resulting from injury to the nervous system *or* to a muscular mechanism." (§ 12022.7, subd. (b), italics added.) Simply put, there is no legal requirement that a victim "suffer paralysis from a neurological injury" for purposes of this enhancement.

And expert testimony is not required to establish that Aaron D. was paralyzed as defined by the statute. Defendant cites no authority, nor has independent research revealed any, that requires an expert witness to establish that Aaron D. suffered paralysis

7

as defined in the statute. Rather, expert testimony is permitted when a subject is "sufficiently beyond common experience" and expert opinion "would assist the trier of fact." (Evid. Code, § 801, subd. (a).) Here, the issue of whether Aaron D. suffered a major loss of motor function that resulted from injury to a muscular mechanism was susceptible to a common sense assessment by the jury, and there was no need for expert medical testimony.

The jury could have reasonably concluded from the evidence that Aaron D.'s right leg injuries constituted a "major . . . loss" of "motor function." (§ 12022.7, subd. (b).) Aaron D. suffered a major loss of the function of his right leg when it was amputated at the shin. Because of the amputation, Aaron D. struggles to walk, is mostly wheelchair bound and requires assistance for "everything." Before the collision, Aaron D. was a manager at McDonald's and did electrical work, but he is no longer able to perform his job duties. He cannot cook or shower himself. His other muscles have atrophied from lack of use, and he suffers from constant high levels of pain. These post-crash disabilities sufficiently support the jury's finding that Aaron D. suffered a "major . . . loss" of the "motor function" in his right leg. (§ 12022.7, subd. (b).)

The jury also could have reasonably inferred from the evidence that Aaron D.'s "major . . . loss of motor function" resulted from an injury "to a muscular mechanism." (§ 12022.7, subd. (b).) The collision caused Aaron D.'s right leg to impact the dashboard. His right foot was dislocated, his "LCL and ACL" were torn "completely off" and his femur, knee, shin and ankle were "shattered." He had a rod placed into his femur through his hip; a stabilizer placed in his leg and pins were put into his ankle to keep it in place. The swelling from his right leg injuries made his leg susceptible to infection, and ultimately, it became infected to the point where amputation became necessary. Based on the chain of events leading up to the lower leg amputation, a jury could have reasonably concluded that Aaron D.'s "major . . . loss" of "motor function" resulted from an injury "to the muscular mechanism." (§ 12022.7, subd. (b).)

8

We likewise reject defendant's argument that causation cannot be determined on this record. According to defendant, the evidence does not establish whether the amputation resulted from the accident or "other factors" including Aaron D.'s weight and drinking habits. Aaron D. testified that the crash caused his injuries and the resulting complications. Defendant essentially asks this court to reevaluate the evidence in a light most favorable to him and to draw contrary inferences from the evidence. Given the deferential standard of review, we cannot do so. (*People v. Myles* (2023) 89 Cal.App.5th 711, 740 ["for purposes of substantial evidence review, we are not permitted to draw inferences contrary to the verdict"].)

Finally, we need not assess defendant's argument that there is a lack of evidence on whether Aaron D. suffered a brain injury or became comatose. The People expressly declined to rely on that theory of the section 12022.7, subdivision (b) enhancement.

## DISPOSITION

The judgment is affirmed.

/s/
MESIWALA, J.

We concur:

/s/
HULL, Acting P. J.

/s/
DUARTE, J.

9

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C101541 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE003037) |
| v. | ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION |
| SCOTT LOUIS FEISE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Tami R. Bogert, Judge. Affirmed.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Christopher J. Rench, and Jessica A. Eros, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part I.

10

THE COURT:

The opinion in the above-entitled matter filed on September 25, 2025, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be partially published in the Official Reports and it is so ordered.

BY THE COURT:

/s/
HULL, Acting P. J.

/s/
DUARTE, J.

/s/
MESIWALA, J.

11